# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles R. Norgle | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 2418 | **DATE** | 1/24/2001 |
| **CASE TITLE** | THE NOSTALGIA NETWORK, INC. vs. BONNIE M. LOCKWOOD | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due _____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Plaintiff's motion for summary judgment is granted. Defendant's motion for summary judgment is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | **Document Number** |
| | Notices mailed by judge's staff. | | JAN 25 2001 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | **23** |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | EF | courtroom deputy's initials | 01 JAN 24 PM 4:51 | date mailed notice |
| | | Date/time received in central Clerk's Office | | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THE NOSTALGIA NETWORK, INC., <br> d/b/a/ The GoodLife TV Network, <br> a Delaware Corporation, <br><br> Plaintiff, <br><br> vs. <br><br> BONNIE M. LOCKWOOD, an <br> individual; MERRICK SCOTT RAYLE, <br> an individual; and RAYLE & PARTNERS, <br> a sole proprietorship, <br><br> Defendants. | No. 00 C 2418 <br><br> HONORABLE CHARLES R. NORGLE |

**OPINION AND ORDER**

CHARLES R. NORGLE, SR. District Judge

Before the court are the parties' cross motions for summary judgment. For the following reasons, the court grants Plaintiff's motion and denies Defendant's motion.

## I. BACKGROUND

This case of diversity jurisdiction arises from Plaintiff Nostalgia Network's ("Nostalgia") attempts to collect a judgment in excess of $3,000,000.00 entered in its favor against Merrick Scott Rayle ("Rayle") in a legal malpractice action. Rayle is an attorney licensed to practice law in California and Illinois, who provided legal representation to Nostalgia. Rayle & Partners, despite its name, is Rayle's sole proprietorship through which he practices law. Bonnie Lockwood ("Lockwood") is romantically involved with Rayle, and has also acted as his office manager and paralegal. By this suit, Nostalgia seeks to hold Lockwood liable for over $300,000.00, which Nostalgia alleges Rayle fraudulently transferred to Lockwood.

The facts underlying this suit involve numerous lawsuits, judgments, and transfers of assets, which the court summarizes in chronological order. The tale begins with Rayle providing legal services to Nostalgia in 1992 and 1993. Nostalgia was not pleased with Rayle's representation, and in October 1994, filed suit against him in the United States District Court for the Central District of California. The suit, which alleged legal malpractice and various breaches of duties, remained open for almost five years.

From August 1, 1996 until June 10, 1997, Rayle was the sole owner of bank account #080-250-6 ("the Account") at the Fowler State Bank in Indiana. During this time, Rayle deposited substantial sums of money into the Account, and used those funds to pay personal and business expenses.

On June 10, 1997, Rayle transferred ownership of the Account from himself alone to himself and Lockwood as joint tenants with rights of survivorship. Lockwood was authorized to write checks on the Account, and did so. Some of the checks Lockwood wrote were payable to herself, which she deposited in her personal accounts. Rayle continued to deposit substantial sums into the Account and used those funds to pay his personal and business expenses.

From 1997 through early 1999, Rayle was a party to three lawsuits in addition to the one brought by Nostalgia. Those suits were: (1) Technidisc v. Merrick Scott Rayle, et. al, No. BC 172 417, pending in California state court; (2) Cassavitis v. Rayle, et al, No. BC 191 109, pending in California state court; and (3) Rayle & Partners v. The Town of Cicero, No. 98 L 14370, pending in Illinois state court.

On December 8, 1997, Rayle was found jointly and severally liable in the amount of $81,459.49 in the Technidisc suit. Technidisc registered the judgment in Illinois state court, and

2

began collection efforts. On February 2, 1999, the Illinois state court entered a rule to show cause why Rayle should not be held in contempt for failing to appear on a citation to discover assets related to the Technidisc judgment. Also on February 2, 1999, Rayle received a copy of a motion for default judgment against him in the Cassavitis case.

On February 5, 1999, Rayle satisfied the Technidisc judgment by wire transferring $81,459.99 from the Account to Technidisc's counsel. Also on February 5, 1999, Rayle transferred his remaining interest in the Account ($60,644.89) to Lockwood. Lockwood did not give Rayle any consideration for the transfer of his interest in the Account. Lockwood continued to write checks from the Account, the majority of which were for Rayle's personal and business expenses. Despite Rayle's transfer of his interest in the Account, he remained a signatory on the Account, continued to write checks from the Account for his personal and business expenses, and remained a beneficiary of the Account. Rayle also had sole possession and control of the only debit card associated with the Account, and used that card to withdraw cash.

As of February 5, 1999, Rayle's total assets included: (1) the $60,644.89 in the Account; (2) three investment accounts holding approximately $28,000.00; (3) his claim against the Town of Cicero for $315,725.24; and (4) some insignificant personal belongings.

A chronology of subsequent events follows:

- Early March 1999: Rayle received a check in the amount of $26,068.61. On March 15, 1999 Rayle gave the check to Lockwood to deposit in the Account. Lockwood deposited the check into the Account, and did not give Rayle any consideration for this check.

- March 18, 1999: Rayle transferred $464.96 to Lockwood. Lockwood does not claim that she gave any consideration for this transfer.

3

- March 26, 1999: The California state court entered a default judgment in the amount of $593,000.00 against Rayle in the Cassavitis matter.

- April 12, 1999: Rayle transferred $6,146.25 to Lockwood. Lockwood does not assert that she gave Rayle anything in return.

- July 6, 1999: Nostalgia won a default judgment against Rayle in its malpractice action. The California district court awarded Nostalgia $3,060,377.96 ("California judgment").

- July 27, 1999: Rayle settled his lawsuit against the Town of Cicero, which issued a check to Rayle & Partners in the amount of $218,000.00.

- July 29, 1999: Rayle endorsed the $218,000.00 check and made it payable to Lockwood. Lockwood did not give Rayle any consideration for this money.

- Early August 1999: Nostalgia registered the California judgment in the Circuit Court of Cook County.

- August 16, 1999: Rayle transferred $2,978.15 to Lockwood, who does not claim that she gave any consideration for this transfer.

- September 10, 1999: Nostalgia served Rayle with a citation to discover assets in connection with the California judgment.

- September 22, 1999: Rayle liquidated his three investment accounts, which contained a total of $28,347.30.

- September 29, 1999: Rayle received a check from each of the three investment accounts, and endorsed them for deposit in the Account. Lockwood deposited the checks, and did not give Rayle any consideration for these three checks.

- Early October 1999: Nostalgia filed a "Complaint on Foreign Judgment" in Benton County Indiana ("Indiana action"), naming as defendants Rayle and a partnership called "Crane Rayle & Lenneman." Nostalgia also named Fowler State Bank as a garnishee-defendant. In the Indiana action, Nostalgia stated that it was the owner of the California judgment, and that it believed Rayle had assets at the Fowler State Bank.

- October 26, 1999: The Indiana court adopted the California judgment as its own and froze the Account. Lockwood was not named as a party in the Indiana action, but she filed an objection to the freezing of the Account, claiming that the funds in the Account belonged to her, and did not belong to Rayle. Nostalgia responded to Lockwood's objection, arguing that the money was Rayle's, and alternatively, that if it was held by Lockwood, Rayle fraudulently transferred it to her.

- February 15, 2000: The Indiana court issued its findings as to the ownership of the Account. The court stated:

> The parties present argument concerning the account at Fowler State Bank and its potential application to a Judgment in this cause. The account number at issue is 080-250-6, in the name of Merrick Scott Rayle and/or Bonnie M. Lockwood. Further, [Nostalgia] submitted, and the Court admitted, Exhibit #28. The Court also took Judicial Notice of all papers, pleadings, and filings in this cause.
> After review of the Exhibits, memorandums, and Arguments of counsel, the Court now FINDS that the funds in the account should be applied to the Judgment. The Court determines that the money held in the account at Fowler State Bank, Account 080-250-6 belongs to Merrick Scott Rayle. In the alternative, if it were presumed that the money was that of Bonnie Lockwood as a result of documents executed and the fashion in which title is held, the Court FINDS nonetheless that the money was Merrick Scott Rayle's and transferred to Ms. Lockwood merely for the purpose of avoiding creditors.
> THEREFORE, the Court directs and Orders the Fowler State Bank to transfer all principal and interest held under Account Number: 080-250-6 to the Clerk's Office for application to the Judgment in this cause and distribute the same to [Nostalgia].

(Pl.'s Local Rule 56.1 Ex. 29.) This order awarded the funds remaining in the Account, $36,111.33, to Nostalgia.

On April 20, 2000, Nostalgia filed this suit claiming that Rayle's transfer of funds to Lockwood were fraudulent under Illinois and Indiana law. The specific transfers at issue are:

(1) $60,644.89 on February 5, 1999;

(2) $26,068.61 on March 15, 1999;

(3) $464.96 on March 18, 1999;

(4) $6,146.25 on April 12, 1999;

(5) $218,000.00 on July 27, 1999;

(6) $2,978.15 on August 16, 1999;

(7) $28,347.30 on September 29, 1999.

These transfers total $342,650.16. Nostalgia subtracts the amount recovered in the Indiana action, $36,111.33, for a total amount sought from Lockwood of $306,538.83[1].

On April 26, 2000, counsel filed an appearance in this suit for all Defendants. On August 14, 2000, counsel withdrew its appearance for Rayle and Rayle & Partners. Counsel stayed in the case on behalf of Lockwood, and filed her answer to the complaint. New counsel has not yet appeared on behalf of Rayle and Rayle & Partners, and those Defendants have not answered.

---

[1] The court notes an arithmetic error in Nostalgia's complaint. The amount in controversy is $306,538.83, rather than the amount stated in Nostalgia's complaint, $306,336.83. The total amount of the allegedly fraudulent transfers is $342,650.16, less the amount awarded in the Indiana action, $36,111.33, for a total of $306,538.83.

Nostalgia now moves for summary judgment, arguing that the material facts are not in dispute, and that Lockwood is liable under both the Illinois and Indiana fraudulent transfer statutes. Lockwood also moves for summary judgment, arguing that this suit is barred by res judicata, collateral estoppel, and judicial estoppel, stemming from the Indiana action.

## II. DISCUSSION

### A. Jurisdiction

The suit at bar is not a supplementary proceeding under Federal Rule of Civil Procedure 69. See generally Yang v. City of Chicago, 137 F.3d 522, 524-26 (7th Cir. 1998) (discussing Rule 69 proceedings). Rather, it is a distinct and separate lawsuit from Nostalgia's suit against Rayle in the Central District of California and the subsequent supplementary proceedings in Illinois and Indiana state court. Two factors lead to this conclusion. First, Nostalgia filed this suit as an original suit, and did not cite Rule 69, which is the proper method to bring a supplementary proceeding. See e.g. id. (discussing subject matter jurisdiction and Rule 69). Second, in its summary judgment briefs, Nostalgia repeatedly characterizes this suit as a plenary suit. The court takes no position as to whether a Rule 69 proceeding would have been proper. Cf. id. at 525 (citing cases). Instead, the court addresses the issues as the parties have presented them, see Cohen v. Bucci, 905 F.2d 1111, 1112 (7th Cir. 1990), which in this case is as a new suit.

Because this is a new suit, the court must ensure that it has subject matter jurisdiction. See generally Tylka v. Gerber Prods. Co., 211 F.3d 445, 447 (7th Cir. 2000); In re Shell Oil Co., 966 F.2d 1130, 1133 (7th Cir. 1992). There must be an independent basis for subject matter jurisdiction when a federal judgment creditor brings a new federal suit to collect on its judgment from a non-party. Peacock v. Thomas, 516 U.S. 349, 358-59 (1996). Here, the court has jurisdiction based on

7

diversity of citizenship, 28 U.S.C. § 1332. Nostalgia is a Delaware corporation with its principal place of business in Washington, D.C. (Am. compl. ¶ 1.) Rayle and Lockwood are both citizens of Illinois. (Am. compl. ¶¶ 2, 3.) Because Rayle & Partners is Rayle's sole proprietorship (am. compl. ¶ 4), its citizenship is the same as Rayle's. See Exclusive Temporaries of Georgia, Inc. v. A&R Janitorial Servs., No. 88 C 5501, 1988 WL 72303 (N.D. Ill. July 1, 1988). The amount in controversy, over $300,000.00, easily satisfies the jurisdictional minimum. Thus, the court has jurisdiction over the suit, and addresses the parties' motions.

**B.    Standards for summary judgment**

Summary judgment is permissible when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The nonmoving party cannot rest on the pleadings alone, but must identify specific facts, see Cornfield v. Consolidated High School District No. 230, 991 F.2d 1316, 1320 (7th Cir. 1993), that raise more than a mere scintilla of evidence to show a genuine triable issue of material fact. See Murphy v. ITT Technical Services, Inc., 176 F.3d 934, 936 (7th Cir. 1999); see also Shank v. William R. Hague, Inc., 192 F.3d 675, 682 (7th Cir. 1999) (stating that a party opposing summary judgment must present "what evidence it has that would convince a trier of fact to accept its version of events"). Nevertheless, even if a party fails to respond to a summary judgment motion, the court cannot grant the motion unless summary judgment is otherwise appropriate. See Johnson v. Gudmundsson, 35 F.3d 1104, 1112 (7th Cir. 1994) (noting that the court cannot grant summary judgment as a sanction against a party that fails to respond to the motion).

In deciding a motion for summary judgment, the court can only consider evidence that would be admissible at trial under the Federal Rules of Evidence. See Bombard v. Fort Wayne

Newspapers, Inc., 92 F.3d 560, 562 (7th Cir. 1996). The court views the record and all reasonable inferences drawn therefrom in the light most favorable to the party opposing summary judgment. See Fed. R. Civ. P. 56(c), see also, Perdomo v. Browner, 67 F.3d 140, 144 (7th Cir.1995). "In the light most favorable" simply means that summary judgment is not appropriate if the court must make "a choice of inferences." See United States v. Diebold, Inc., 369 U.S. 654, 655 (1962), see also, First Nat'l. Bank of Arizona v. Cities Service Co., 391 U.S. 253, 280 (1968); Wolf v. Buss (America) Inc., 77 F.3d 914, 922 (7th Cir. 1996). The choice between reasonable inferences from facts is a jury function. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

### C. Nostalgia's motion

Nostalgia argues that Rayle's transfers of money to Lockwood were fraudulent under both the Illinois and Indiana fraudulent transfer statutes. Nostalgia does not present a choice of law analysis, but the analysis is the same under either law. Both states have adopted the Uniform Fraudulent Transfers Act, which outlines three types of transactions that are fraudulent and voidable. The first two types of fraudulent transactions are known as "fraudulent in fact," while the third is known as "fraudulent in law." See In re Souleman, 215 B.R. 158, 167-68 & 170-71 (Bankr. N.D. Ill. 1997) (discussing transfers that were fraudulent in fact and fraudulent in law); Regan v. Ivanelli, 617 N.E.2d 808, 814 (Ill. App. Ct. 1993) (discussing the Illinois fraudulent transfer act). Once a transfer of assets is found fraudulent, the creditor is entitled to recover from the transferee. 740 ILCS § 160/8; Ind. Code § 32-2-7-17.

Both the Illinois and Indiana statutes describe fraud in fact as follows:

> A transfer made or obligation incurred by a debtor is fraudulent as to a
> creditor, whether the creditor's claim arose before or after the transfer was

made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

 (1) with actual intent to hinder, delay or defraud any creditor or the debtor; or

 (2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

  (A) was engaged or was about to engage in a business or transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

  (B) intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

740 ILCS § 160/5; Ind. Code § 32-2-7-14. Fraud in fact analysis focuses on the debtor's intent rather than the timing of the creditor's claim.

By contrast, the fraud in law analysis does not consider the debtor's intent, and only applies to transfers that occur after the creditor's claim arose. The Illinois statute reads:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

740 ILCS §160/6(a); see also Ind. Code § 32-2-7-15 (identical content); Falcon v. Thomas, 629 N.E.2d 789, 795 (Ill. App. Ct. 1994) (discussing the Illinois fraudulent transfer act). Nostalgia claims that each of the seven transfers of money from Rayle to Lockwood between February 5, 1999 and September 29, 1999 is fraudulent in both fact and law. The court finds it necessary to analyze only the fraud in law scenario.

A transfer is fraudulent in law when a debtor transfers assets after a claim arises against him, the debtor does not receive adequate consideration for the transfer, and the debtor is insolvent or becomes insolvent as a result of the transfer. 740 ILCS §160/6(a); Ind. Code § 32-2-7-15. Thus, the

10

court must determine: (1) whether Nostalgia's claim against Rayle arose prior to Rayle's first transfer to Lockwood on February 5, 1999; (2) whether Rayle received reasonably equivalent value in exchange for the transferred asset; and (3) whether Rayle was insolvent at the time of, or as a result of, the transfers. Once these three elements are present, there is a presumption of fraud, which is conclusive unless rebutted. See In re Souleman, 215 B.R. at 171 (citing cases); Regan, 617 N.E.2d at 814. In this case, all three elements are present and the presumption of fraud is unrebutted.

The fraudulent transfer acts define "claim" broadly. A claim "means a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal equitable, secured, or unsecured." 740 ILCS § 160/2(c); Ind. Code § 32-2-7-3. The filing of a lawsuit establishes the existence of a claim, although the claim may exist sooner than that. 740 ILCS § 160/2(c); Ind. Code § 32-2-7-3; see also Falcon, 629 N.E.2d at 795 (recognizing that filing of a lawsuit prior to the transfer at issue satisfied the pre-existing claim requirement). Here, Nostalgia's claim against Rayle arose no later than October 1994, when it filed suit against him in the Central District of California. The disputed transfers to Lockwood took place almost five years later, between February and September 1999. Thus, Nostalgia's claim against Rayle pre-existed his transfers of assets to Lockwood.

Next, Nostalgia demonstrates that Rayle did not receive reasonably equivalent value for the transfers. A transferee gives value for a transfer by exchanging property (not promises) for the transferred asset. 740 ILCS § 160/4(a); Ind. Code § 32-2-7-13(a). The value of the property given must be reasonably equivalent to the asset transferred. See Falcon, 629 N.E.2d at 795-96 (holding that $10 and "other good and valuable consideration" was not reasonably equivalent value for real estate worth over $1million). Here, Lockwood testified that she did not provide Rayle with any

11

consideration for most of the transfers. Indeed, Lockwood's testimony was that the money Rayle transferred to her "became" hers, and that she did not give Rayle anything in return. The only possible concern involves three transfers, about which Lockwood did not testify.[2] Lockwood, however, waives this issue by not raising it. See Nutrasweet Co. v. X-L Engineering Co., 227 F.3d 776, 791 (7th Cir. 2000) (failure to raise an issue results is a waiver). Indeed, Lockwood does not contest the substantive aspects of Nostalgia's motion. Even if Lockwood had raised the issue, the record is clear that Lockwood did not give anything of value to Rayle for these transfers. Lockwood presents nothing to support an inference to the contrary. The court is not required to turn a blind eye to the facts, which amply demonstrate that Rayle transferred his assets to Lockwood, and did not receive any consideration, much less reasonable consideration, in return.

Finally, Rayle was insolvent at the time he made the transfers to Lockwood. A debtor is insolvent when the sum of his debts exceeds his assets. 740 ILCS § 160/3(a); Ind. Code § 32-2-7-12(c). A debtor's assets do not include property that the debtor transferred in a manner that makes the transfer voidable under the fraudulent transfer act. 740 ILCS § 160/3(d); Ind. Code § 32-2-7-12(a). In this case, as of February 5, 1999, Rayle's assets totaled approximately $400,000.00. Shortly thereafter, during the time that Rayle was transferring his assets to Lockwood, he was adjudged liable for over $3.5million. If Rayle was not insolvent prior to his transfers, he certainly became so as a result of them. Therefore, the court finds that Rayle was insolvent at the time that he transferred his assets to Lockwood.

---

[2]Those are: (1) $464.96 on March 18, 1999; (2) $6,146.25 on April 12, 1999; (3) $2,978.15 on August 16, 1999.

12

On this record, all three elements of fraud in law are present, creating a presumption that Rayle's transfers to Lockwood were fraudulent. Lockwood presents nothing to rebut that presumption. Indeed, Lockwood's response and cross-motion ignore the substance of the fraudulent transfer claims. The court finds that all of Rayle's transfer of assets to Lockwood were fraudulent in law, and are voidable.[3] 740 ILCS § 160/6; Ind. Code § 32-2-7-15. Nostalgia is entitled to recover from Lockwood, 740 ILCS § 160/8; Ind. Code § 32-2-7-17, unless there is merit to her cross motion for summary judgment. It is to that issue that the court now turns.

**D. Lockwood's motion**

Lockwood makes two arguments in support of her summary judgment motion. She claims that Nostalgia's garnishment of the Account during the Indiana action: (1) bars this suit under the doctrine of res judicata; and (2) collaterally and judicially estops Nostalgia from bringing this suit. Neither argument is persuasive.

**1. Choice of Law**

Typically a federal court hearing a diversity case applies the choice of law rules of its forum state. See Gramercy Mills, Inc. v. Wolens, 63 F.3d 569, 572 (7th Cir. 1995) (citing Klaxon v. Stentor Elec. Mfg. Co., 313 U.S. 487 (1941)). Lockwood's summary judgment motion, however, involves the preclusive effect of state court proceedings on a later federal lawsuit. In such a case, the full faith and credit rule of 28 U.S.C. §1738 requires the court to apply the preclusion law of the state that entertained the earlier proceeding. See Migra v. Warren City School Dist., 465 U.S. 75,

---

[3] If the court were to give Lockwood credit for the transfers of March 18, April 12, and August 16, 1999, the judgment would be reduced by $9,589.36. The court, however, does not give Lockwood such credit. As discussed supra, Lockwood waived the issue, and the only reasonable inference to draw from the facts is that Lockwood gave no consideration for any of the transfers.

13

80-86 (1984); Saecker v. Thorie, No. 00-2257, 2000 WL 1810097 (7th Cir. Dec. 12, 2000). Therefore, the court analyzes the parties' arguments under Indiana law.

**2. Res Judicata:**

Indiana res judicata law prevents repetitive litigation of the same suit. See generally Wagle v. Henry, 679 N.E.2d 1002, 1005 (Ind. Ct. App. 1997). The Indiana doctrine of res judicata has two distinct branches; claim preclusion and issue preclusion. See id. What the parties refer to as res judicata is the claim preclusion branch.

The claim preclusion issue must be analyzed in light of the fact that the Indiana action was a proceeding supplemental under Indiana law. Similar to many jurisdictions, Indiana allows proceedings supplemental, so a judgment creditor can remedy a debtor's failure to pay a money judgment. See Ind. Trial Rule 69; Park Jefferson Apts. v. Storage Rentals, 738 N.E.2d 685, 688-89 (Ind. Ct. App. 2000). A proceeding supplemental is not an independent cause of action. See Park Jefferson Apts., 738 N.E.2d at 688-89; Stuard v. Jackson & Wickliff Auctioneers, Inc., 670 N.E.2d 953, 955-56 (Ind. Ct. App. 1996). Rather, it is a continuation of the original suit that rendered the judgment. See Park Jefferson Apts., 738 N.E.2d at 688-89; Stuard, 670 N.E.2d at 955-56. In this case, the Indiana action was a proceeding supplemental to Nostalgia's original action for legal malpractice that Nostalgia filed in California district court in 1994.

Claim preclusion applies to proceedings supplemental and will bar a subsequent action when: (1) the same specific property is the subject of both actions; (2) the same issues exist in both proceedings; (3) the same evidence is necessary to support the allegations in both proceedings; and (4) the same parties are involved for the same purpose or objective. Tipton v. Flack, 271 N.E.2d 185, 190 (Ind. Ct. App. 1971); see also Kirk v. Monroe County Tire, 585 N.E.2d 1366, 1369 (Ind.

14

Ct. App. 1992) (citing Tipton). The Tipton case concerned successive proceedings supplemental, rather than a plenary suit following a proceeding supplemental. The parties did not cite, and the court did not find, an Indiana case using the Tipton res judicata analysis to a new suit following a proceeding supplemental. This does not change the court's analysis, however. As discussed below, the rationale of Tipton and similar cases is applicable to the case at bar, notwithstanding that it is an independent suit.

The parties dispute the first and fourth Tipton elements, that is, whether the same specific property is at issue, and whether this suit involves the same parties for the same purpose.[4] The parties' arguments on both points are essentially the same. Lockwood argues that the property at issue in both the Indiana action and this suit is the Account, and that Nostalgia's purpose in both suits was to recover all funds from the Account. Nostalgia argues that the Indiana action involved only the funds in the Account at the time of the proceedings, and does not include money Rayle fraudulently transferred to Lockwood that passed out of the Account prior to the Indiana action. Therefore, Nostalgia asserts that both the specific property at issue, and the purpose of the two suits, are different.

A short background on Indiana law illustrates the faults of Lockwood's argument. Indiana proceedings supplemental are equitable in nature, to ensure as much as possible that judgment creditors can collect on their judgments. See Beavans v. Groff, 5 N.E.2d 514, 516 (Ind. 1937); Giffen v. Edwards, 711 N.E.2d 35, 36 (Ind. Ct. App. 1999); Stuard, 670 N.E.2d at 955. To that end,

---

[4] Nostalgia does not raise the issue of whether the third Tipton element, the same evidence, is present. Tipton, 271 N.E.2d at 190. Because the Indiana action was a continuation of Nostalgia's legal malpractice claim, and the instant suit concerns subsequent fraudulent transfers of assets, the two suits obviously do not share the same evidence. Nostalgia did not raise this issue, so the court does not address it further.

15

Indiana proceedings supplemental are in rem actions against specific property. See Beavans, 5 N.E.2d at 516-17 (considering the res judicata effect of a suit involving a single transaction involving real estate in two counties, and holding that successive proceedings supplemental were permitted against both parcels); Tipton, 271 N.E.2d at 189-90 (holding that res judicata did not bar a judgment creditor from seeking money from a different garnishee in a second proceeding supplemental). This long standing Indiana law allows a judgment creditor to pursue successive proceedings to satisfy the judgment, so long as the creditor does not pursue the identical property in repeated proceedings. Beavans, 5 N.E.2d at 517; see also Giffen, 711 N.E.2d at 36 (citing Beavans and rejecting the argument that a bankruptcy proceeding barred a subsequent fraudulent transfer suit); Tipton, 271 N.E.2d at 190 (rejecting the argument that a proceeding supplemental barred subsequent proceedings supplemental).

Applying these rules to the case at bar, the court finds that Nostalgia is not seeking recovery of identical property in successive actions. The Indiana action, being a proceeding supplemental, was an in rem suit limited to the funds frozen in the Account by the Indiana state court order. Cf. Beavans, 5 N.E.2d at 516-17; Tipton, 271 N.E.2d at 189-90. The instant suit involves other funds that were not in the Account at the time of the earlier proceeding. And, Nostalgia specifically omits the amount it received in the Indiana action from its ad damnum clause in this suit. Thus, the case at bar is consistent with the Beavans rule, and is not barred by claim preclusion.

Furthermore, the Indiana Supreme Court has expressly rejected Lockwood's argument. Lockwood's position would require a judgment creditor to seek all relief against a garnishee in a single proceeding. The Indiana Supreme Court addressed and rejected this argument in Beavans, and allowed successive proceedings so long as the creditor does not bring repeated claims involving

identical property. Beavans, 5 N.E.2d at 516-17. Although Beavans itself is an old case, the Indiana courts continue to apply the rule. See e.g. Giffin, 711 N.E.2d at 36. Lockwood points to no contrary authority, and the court's own research shows that Beavans remains good law. See id. Accordingly, the court rejects Lockwood's argument. With this disposition it is unnecessary for the court to determine whether the fourth Tipton element (identical parties and purpose) is present, and the court does not address that issue.

### 3. Collateral and Judicial Estoppel:

Lockwood argues that Nostalgia is collaterally and judicially estopped from litigating the ownership of money that passed through the Account. Recall that in the Indiana action, Lockwood claimed to own the funds in the Account, and objected to its freezing. In response to Lockwood's objection, Nostalgia argued that Lockwood was merely Rayle's nominee, and that, if Rayle did transfer the money Lockwood, he did so fraudulently. The Indiana state court agreed with Nostalgia and found that the money belonged to Rayle, and alternatively, if Rayle transferred it to Lockwood, he did so to avoid his creditors. (See Pl.'s Local Rule 56.1 Ex. 29.) Lockwood hangs her hat on the Indiana state court's finding, arguing that Nostalgia is now collaterally and judicially estopped from litigating the ownership of the money that Rayle transferred to her. Lockwood's argument is without merit.

Collateral estoppel is inapposite to this case. "Collateral estoppel, or what is known as 'issue preclusion,' bars subsequent relitigation of the same fact or issue where that fact or issue was necessarily adjudicated in a former suit and the same fact or issue is presented in a subsequent cause of action." Slutsky v. Crews, 713 N.E.2d 288, 290-91 (Ind. Ct. App. 1999). Contrary to Lockwood's argument, Nostalgia is not relitigating the ownership of Rayle's transferred funds.

17

Assuming arguendo that Nostalgia litigated ownership of the Account in the Indiana action, that is not what Nostalgia is doing in this suit. Rather, Nostalgia is seeking to avoid fraudulent transactions and recover the fraudulently transferred assets, as it is allowed to do under the Illinois and Indiana fraudulent transfer acts. See discussion supra at 9-13. Technical labels of "ownership" are not part of a fraudulent transfer action. See id. and cases cited therein. Indeed, the purpose of the fraudulent transfer acts is to thwart unscrupulous debtors who attempt to avoid their obligations through sham changes in "ownership." Lockwood's argument misses this point. In short, there is no basis for collateral estoppel in this suit.

Lockwood's judicial estoppel argument is also without merit. Indiana recognizes that judicial estoppel focuses on the relationship between the litigant and the court. See United Rural Elec. Membership Corp. v. Indiana Michigan Power Co., 716 N.E.2d 1007, 1010-11 (Ind. Ct. App. 1999). "'The purpose of judicial estoppel is to protect the integrity of the judicial process rather than to protect litigants from allegedly improper conduct by their adversaries.'" Id. (quoting Wabash Grain, Inc. v. Smith, 700 N.E.2d 234, 237 (Ind. Ct. App. 1998)). Judicial estoppel prevents a party from asserting a position that is inconsistent with a position asserted in a previous legal proceeding. United Rural Elec. Membership Corp., 716 N.E.2d at 1010-11. Here, Lockwood argues that Nostalgia's position in the Indiana action (that Rayle owned the funds in the Account) is inconsistent with its arguments in this action. The court rejects that argument. Nostalgia's arguments in both proceedings are consistent with each other. Indeed, in both forums, Nostalgia argued that Rayle was avoiding his debts, and that any transfer of assets was fraudulent. Nostalgia has done nothing to impugn the judicial process. Accordingly, the court denies Lockwood's summary judgment motion.

### III. CONCLUSION

For the foregoing reasons, the court grants Nostalgia's motion for summary judgment. Judgment in the amount of $306,538.83 is entered in Nostalgia's favor against Lockwood. Lockwood's motion for summary judgment is denied.

IT IS SO ORDERED.

ENTER: *[signature]*
CHARLES RONALD NORGLE, SR. Judge
United States District Court

DATED: 1-23-01